IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, | ) ) ) | CIVIL NO. 08-00557 SOM/LEK |
| Plaintiff, | ) ) | ORDER GRANTING STATE FARM FIRE AND CASUALTY COMPANY'S |
| vs. | ) ) | MOTION FOR SUMMARY JUDGMENT AND DENYING COUNTERMOTIONS |
| MIGUEL RAMIREZ, et al, | ) ) | FOR SUMMARY JUDGMENT |
| Defendants | ) ) | |
| _____ | ) ) | |
| MIGUEL RAMIREZ, et al., | ) ) | |
| Third-Party Plaintiffs | ) ) ) | |
| vs. | ) ) | |
| PAMELA JONES, et al., | ) ) | |
| Third-Party Defendants | ) ) | |

ORDER GRANTING STATE FARM FIRE AND CASUALTY COMPANY'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING COUNTERMOTIONS FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

This is a diversity action involving insurance coverage

for property located in Waimanalo, Hawaii.  Miguel and Valerie

Ramirez, lessees of state land, have been sued in state court by

their neighbors, Thomas Grande and Kathleen Dowd.  State of

Hawaii Defendants have also been named in that action.  The state

court action does not seek damages; instead, it seeks the removal

of a dumpsite/landfill on the Ramirezes' Waimanalo property.

Miguel and Valerie Ramirez have a State Farm Fire and Casualty Company rental condominium insurance policy for a Waikiki apartment and a homeowner's insurance policy for the Waimanalo property.  The State of Hawaii is an additional insured under the homeowner's policy.  State Farm has moved for summary judgment, arguing that the rental condominium insurance policy does not cover claims arising out of Waimanalo property and that neither the homeowner's insurance policy nor the rental condominium insurance policy covers the claims asserted in the state-court action.  At the hearing, the Ramirezes clarified that they are not seeking insurance coverage under the rental condominium property insurance policy.  The remaining issue is therefore whether there is potential insurance coverage under the homeowner's insurance policy for the Waimanalo property.

This court agrees with State Farm that the claims asserted in the state-court action are not covered by the homeowner's policy.  This court is not convinced by the estoppel argument raised by the Ramirezes and the State of Hawaii Defendants, as State Farm has been defending the Ramirezes and the State of Hawaii Defendants in the state-court action under a reservation of rights and there has been no showing that manifest injustice would flow from a coverage ruling by this court.  Accordingly, the court grants summary judgment in favor of State Farm, determining that State Farm does not have a duty to defend

or indemnify the Ramirezes and the State of Hawaii Defendants from the claims asserted in the state-court action.  This court denies the countermotions filed by the Ramirezes and the State of Hawaii Defendants.

This order leaves for further determination the Ramirezes' third-party claims, which essentially claim that Third-Party Defendants sold the Ramirezes the wrong insurance. See Defendants Miguel Ramirez and Valerie Ramirez's Third Party Complaint Against Third Party Defendants Pamela Jones and Kelly Harada (Oct. 9, 2009) (Docket No. 36).

II.      SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323.  A

moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the

4

pleadings and instead "must set forth specific facts showing that
there is a genuine issue for trial." Porter v. Cal. Dep't of
Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine
dispute arises if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party." California v.
Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred
Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be
enough doubt for a 'reasonable trier of fact' to find for
plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's
evidence is to be believed, and all justifiable inferences are to
be drawn in that party's favor." Miller, 454 F.3d at 988
(quotations and brackets omitted).

III.     BACKGROUND FACTS.

A.   The State-Court Action.

The Ramirezes and the State of Hawaii Defendants have
been sued in state court by the Ramirezes' Waimanalo neighbors.
The state-court plaintiffs allege that the Ramirezes lease the
Waimanalo property from the State of Hawaii. See Verified
Complaint for Declaratory and Injunctive Relief, Civ. No. 03-1-
2352-11 (RWP) ¶ 16 (Nov. 25, 2003) (attached to State Farm's
motion for summary judgment as Ex. A).

The state-court plaintiffs allege that there is an illegal dumpsite mound "about the size of Aloha Stadium filled to twenty feet," or about 1 1/4 acre in size and twenty-five feet high," on the Ramirezes' property.  Id. ¶ 5.

According to the state-court plaintiffs, the Ramirezes were cited in 1998 by the State of Hawaii Department of Land and Natural Resources ("DLNR") for dumping construction debris, coral debris, dredge material, and black-top pieces without a permit. Since then, the Ramirezes have allegedly continued to "bring in illegal fill material."  Id. ¶¶ 20-21.

The City and County of Honolulu allegedly also cited the Ramirezes for grading without a permit and placing fill in excess of three feet on their property.  Id. ¶ 22.  The state-court plaintiffs allege that the City and County of Honolulu has ordered the Ramirezes to obtain the necessary permit(s) or to restore the area.  Id.

The state-court plaintiffs further allege that, in 2000, the DLNR cited the Ramirezes for dumping 5,949 cubic yards of fill, and ordered the Ramirezes to remove that fill.  Id. ¶ 25.  This citation was allegedly withdrawn when the Ramirezes agreed to cooperate in developing a conservation plan, securing the required permits, and developing a grading plan.  Id. ¶ 29. The state-court plaintiffs allege that, since then, the Ramirezes have continued to fill the dumpsite.  See id. ¶¶ 30-35.

6

The Windward Oahu Soil and Water Conservation District allegedly helped the Ramirezes to cover the dumpsite with compost in 2003.  Id. ¶ 40.  The state-court plaintiffs complain that the dumpsite may become unstable or erode in the event of a flood or storm.  Id. ¶ 9.

No damages are sought in the state-court suit. Instead, the state-court plaintiffs pray for orders declaring that 1) the Windward Oahu Soil and Water Conservation District exceeded its authority by approving the dumpsite and landfill; 2) the City and County of Honolulu has jurisdiction over the dumpsite and landfill; 3) the Ramirezes violated the City and County of Honolulu grading ordinances; 4) and the dumpsite/landfill is a nuisance.  The state-court plaintiffs also seek an order requiring the DLNR and the Ramirezes to remove the dumpsite/landfill and to restore the land to its natural condition.  See Verified Complaint, Prayer for Relief.

The Ramirezes characterize the dumpsite/landfill much more modestly than the state-court plaintiffs.  The Ramirezes refer to it as a "mound of dirt" that, when they began leasing the Waimanalo property from the State of Hawaii in 1998, "was already there in substantially the same size it is now."  See Affidavit of Miguel Ramirez ¶ 9 (Nov. 23, 2009).

B.   <u>The Policies.</u>

1.   <u>The Rental Condominium Policy.</u>

State Farm insured the Ramirezes under a Rental Condominium Unitowners Policy, number 91-BS-0388-7, covering an apartment on Hobron Lane in Waikiki, Hawaii--the insured premises.  This rental condominium policy insured against claims made or suits brought "for damages because of **bodily injury**, **personal injury** or **property damage** to which this coverage applies, caused by an **occurrence**, and <u>which arises from the ownership, maintenance or use of the **insured premises**</u>."  <u>See</u> Ex. C to State Farm's concise statement at 12 (underlining added for emphasis, bold in original).  There is no dispute that the dumpsite/landfill in Waimanalo is unrelated to the apartment in Waikiki for which the rental condominium policy was issued.  The properties are many miles apart, separated by a large mountain range.  The Ramirezes clarified at the hearing that insurance coverage is not being sought under the rental condominium policy. This court therefore rules that, under the rental condominium policy, State Farm has no duty to defend or indemnify its insureds from the claims made in the state-court action.

2.   <u>The Homeowner's Policy.</u>

State Farm insured the Ramirezes under a homeowner's insurance policy, number 61-BL-6454-5 or 6 ("Policy") (attached to State Farm's concise statement as Ex. B).  The Policy insured

8

property located on Mahailua Street, Waimanalo, Hawaii 96795-1122.  The State of Hawaii Defendants are an additional insured under the Policy.

Under Coverage L of the Policy,

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we [State Farm] will:

1.  pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.  provide a defense at our [State Farm] expense by counsel of our choice.

Policy at 15.  The Policy provides that State Farm will "pay for **property damage** to property of others caused by an **insured**."  <u>Id.</u> However, it excludes "**property damage** to property currently owned by any **insured**" and "**property damage** to property rented to, occupied or used by or in the care of any insured . . . [unless] caused by fire, smoke or explosion."  <u>Id.</u> at 17-18.  The Policy also excludes coverage for property damages "caused intentionally by an **insured**" or arising out of "**business** pursuits."  State Farm, however, is not contending that the business exclusion bars coverage.

"Bodily injury" is defined in the Policy as "physical injury, sickness, or disease to a person."  The Policy expressly states that "bodily injury" does not include "emotional distress,

mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." Id. at 1.

     "Property damage" is defined in the Policy as "physical damage to or destruction of tangible property, including loss of use of this property." Id. at 2.

     For purposes of liability coverage and exclusions, the Policy defines "occurrence" as "an accident, including exposure to conditions which results in: a. **bodily injury**; or b. **property damage**; during the policy period." Id.

IV.     ANALYSIS.

     A.   General Law Governing Insurance Contracts.

     Federal courts sitting in diversity apply state substantive law and federal procedural law. See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). When interpreting state law, a federal court is bound by the decisions of a state's highest court. Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995). In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues

10

of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994). Hawaii law requires that an insurance policy be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); see also Haw. Rev. Stat. § 431:10-237 (Michie 2004) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguity must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson. Dawes, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy. See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration). The insurer has the

burden of establishing the applicability of an exclusion.  See
id. at 297, 875 P.2d at 914.

The duty to indemnify is owed "for any loss or injury
which comes within the coverage provisions of the policy,
provided it is not removed from coverage by a policy exclusion."
Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d
93, 108 (2000).  The obligation to defend an insured is broader
than the duty to indemnify.  The duty to defend arises when there
is any potential or possibility for coverage.  Sentinel, 76 Haw.
at 287, 875 P.2d at 904.  However, when the pleadings fail to
allege any basis for recovery under an insurance policy, the
insurer has no duty to defend.  Pancakes of Haw. v. Pomare
Props., 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  In other
words, for State Farm to obtain summary judgment on its duty to
defend, it must prove that it would be impossible for a claim in
the underlying lawsuit to be covered by the Policy.  See Tri-S
Corp. v. W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82, 97
(2006).

"Hawaii adheres to the 'complaint allegation rule.'"
Burlington Ins. Co., 383 F.3d at 944 (citing Pancakes of Hawaii,
Inc. v. Pomare Props. Corp., 85 Haw. 286, 994 P.2d 83 (Haw. Ct.
App. 1997)).  In that regard,

> The focus is on the alleged claims and facts.
> The duty to defend "is limited to situations
> where the pleadings have alleged claims for
> relief which fall within the terms for

> coverage of the insurance contract.  'Where
> pleadings fail to allege any basis for
> recovery within the coverage clause, the
> insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v.
Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230)).

     B.   State Farm Has No Duty to Defend or Indemnify.

The Policy provides insurance coverage for personal
liability for claims or suits against the Ramirezes and the State
of Hawaii "for damages because of **bodily injury** or **property
damage** . . . caused by an **occurrence**."  See Policy at 15.  The
Policy covers "**property damage**" to the property of others caused
by an **insured**," but excludes from coverage "**property damage** to
property currently owned by any **insured**" or "**property damage** to
property rented to, occupied or used by or in the care of any
**insured**," unless the property damage is "caused by fire, smoke or
explosion."  Id. at 16-18.

The state-court action does not involve "bodily
injury."  There is no allegation in the state-court complaint
that alleges "physical injury, sickness, or disease to a person."
See Policy at 1 (defining "bodily injury").  This court is not
persuaded by the State of Hawaii Defendants' contention that a
claim for emotional distress can be inferred from the state-court
complaint.  First, the state-court complaint does not seek
damages and only seeks injunctive relief.  Second, even if a
claim for emotional distress could be read into the state-court

complaint, the Policy only covers emotional distress if "it arises out of actual physical injury to some person." Id. The state-court complaint does not allege that the state-court plaintiffs suffered any "actual physical injury."

This court is also unpersuaded by the State of Hawaii Defendants' citation of Allstate Insurance Company v. Gadiel, 2008 WL 4830847 (D. Haw. Nov. 7, 2008). Although Gadiel noted that, under Hawaii law, "bodily injuries include emotional distress," there is nothing in Gadiel indicating that the court was interpreting the same or a similar insurance policy specifically excluding emotional distress damages unless they arose out of "actual physical injury to some person."

Nor does the state-court complaint allege a covered property damage, which the Policy defines as "physical damage to or destruction of tangible property." Policy at 2 (defining "property damage"). The state-court plaintiffs are not seeking money damages to compensate them for "physical damage to or destruction of [their] tangible property." Instead, the state-court plaintiffs are seeking an order requiring the Ramirezes and the State of Hawaii Defendants to remove the dumpsite/landfill. This does not satisfy the Policy's definition of "property damage."

The court recognizes that, in United States Fidelity and Guaranty Company v. Specialty Coatings Co., 535 N.E.2d 1071,

14

1080 (Ill. App. Ct. 1989), an Illinois court stated that the term "damages" is ambiguous to the lay community. Because ambiguous terms are construed against the insurer, the Illinois court ruled that "property damage" includes "a claim which results in causing him to pay sums of money because his acts or omissions affected adversely the rights of third parties." Id. Accordingly, the Illinois court determined that response costs and other expenditures incurred by complying with injunctive orders are included in the term "property damage." Id.

Specialty Coatings, however, is distinguishable. In Specialty Coatings, the Illinois court equated a neighboring landowner's prayer for an order requiring the insured to remediate the neighboring landowner's property with a prayer that the insured reimburse the neighboring landowner for the costs of remediation. The court stated: "[W]hether the insured must reimburse a party for the cost of cleaning the property or undertake measures itself to cure the injury inflicted upon the environment, the basis is the same: the amount of money spent to remedy property damage caused by the policyholder." Id. at 1081. Here, the state-court plaintiffs are not seeking to have the Ramirezes or the state remediate the state-court plaintiffs' property. Nor are they seeking damages to reimburse them for remediating the property themselves. Instead, the Ramirezes and the State of Hawaii are seeking to have State Farm reimburse them

15

for any costs they may incur in remediating their own property because of actions they allegedly took.  The Policy, however, covers "**property damage** to the property of others caused by an **insured**," excluding from coverage "**property damage** to property currently owned by any **insured**" or "**property damage** to property rented to, occupied or used by or in the care of any **insured**," unless the property damage is "caused by fire, smoke or explosion."  <u>See</u> Policy at 15-18.

Moreover, under the complaint-allegation rule, the state-court action does not involve an "occurrence," which the Policy defines as an "accident, including exposure to conditions which result in . . . **bodily injury** . . . or . . . **property damage**."  Policy at 2.  The state-court complaint alleges that, beginning in April 1998, the Ramirezes were cited by the DLNR for illegally dumping "construction debris, coral debris, canal dredge material, and black top pieces" over a 5,000 square foot area.  <u>See</u> State-Court Complaint ¶ 20.  The state-court complaint alleges that, in 1999, the Ramirezes were cited by the City and County of Honolulu for grading and placing 5949 cubic yards of fill on their property.  <u>See</u> <u>id.</u> ¶ 22.  The state-court complaint alleges that, since then, the Ramirezes have "continued to fill the dumpsite and landfill without any permits or grading plan."  <u>Id.</u> ¶¶ 30-35, 40.  The state-court complaint simply does not allege accidental conduct.

The Ramirezes argue that the state-court complaint alleges an "accident" because it involves "an unexplained or unintentional[] dirt mound that Ramirez was not aware of in 1995." See Opposition at 5 (Nov. 27, 2009); Ramirez Aff. ¶ 9. This court disagrees.

The Ramirezes define "accident" as "An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." But, even with that definition, the state-court complaint does not allege accidental conduct on the part of the Ramirezes.

"The question of what is an 'accident' must be determined by addressing the question from the viewpoint of the insured." See Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 170, 872 P.2d 230, 234 (1994). "[I]n order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions." Id. The state-court complaint alleges that, beginning in 1998, well before the April 2003 to April 2004 policy period, the Ramirezes began receiving citations for illegal dumping. If, as alleged in the Complaint, the Ramirezes have thereafter been dumping on their land or conducting illegal grading, that conduct can hardly be said to have been accidental, and any injuries caused by their

17

conduct are reasonably foreseeable.  Even if a "dirt mound" of
about the same size existed on the property when the Ramirezes
began leasing it in 1995, and even if, as they contend, the
Ramirezes added to that "dirt mound" only while preparing their
land for their ti-leaf farm, the preparation of their land was
intentional conduct, not accidental conduct.

        The Ramirezes argue that State Farm has admitted
coverage.  The Ramirezes note that, on December 22, 2003, State
Farm agreed to defend them from the claims in the state-court
action under a reservation of rights.  The Ramirezes say that, in
a letter dated December 29, 2003, State Farm admitted coverage
when it withdrew its reservation of rights with respect to the
business exclusion contained in the Policy.  See Letter from
Julie Quinn to the Ramirezes (Dec. 29, 2003) (attached to the
Ramirezes Opposition at Ex. 2).  However, withdrawing its
reservation of rights with respect to the business exclusion is
not the same as admitting coverage, especially when the remainder
of that letter explains that State Farm believes there might not
be coverage under the Policy at all.  The withdrawal of the
reservation of right with respect to the business exclusion
contained in the property operated only to prevent State Farm
from asserting that the business exclusion barred coverage.

        In their opposition memorandum, the Ramirezes argue
that they should have more time to conduct discovery before this

18

court rules on the motion for summary judgment.  In essence, the Ramirezes are seeking a continuance of this motion pursuant to Rule 56(f) without complying with the requirements of that rule. The Ramirezes' request for a continuance is denied, as the Ramirezes fail to show what discovery they would conduct and how that discovery might raise a genuine issue of fact that would preclude summary judgment here.  See Fed. R. Civ. P. 56(f) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: 1) deny the motion; [or] 2) order a continuance . . . ."); Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted) (a party requesting a continuance bears the burden of (1) filing a timely application which specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion).

At best, the Ramirezes say that they would like to take the deposition of State Farms' purported agents, which the Ramirezes speculate "could lead to an admission that the subject policies provide coverage."  This pure speculation falls short of establishing that there is some basis to believe that information exists that would be essential to resist State Farm's summary judgment motion.  See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund, 353 F.3d at 1130.  The Ramirezes also argue

that they have outstanding discovery.  But this discovery is not essential to resist the present motion for summary judgment, as it pertains only to State Farm's standard operating procedure for investigating and verifying the needs of persons applying for insurance and whether State Farm followed its standard operating procedures in issuing the Policy.  See Exs. 5 and 6 to Ramirezes' Opp.

> C.   State Farm is Not Estopped From Denying Coverage.

The Ramirezes and the State of Hawaii Defendants argue that State Farm should be estopped from denying coverage because State Farm has been providing a defense in the state-court action since December 2003.  This argument ignores State Farm's repeated statements that it was providing a defense under a reservation of rights.  No manifest injustice will occur if State Farm is allowed to deny coverage at this time.

In AIG Hawai`i Insurance Company, Inc. v. Smith, 78 Haw. 174, 179, 891 P.2d 261, 266 (1995), the Supreme Court of Hawai`i ruled that an insurance company may be estopped from denying coverage when an insured has detrimentally relied on representations or conduct of the insurance company and such reliance was reasonable.  The court noted, however, that the requirement of an insured's detrimental and reasonable reliance "may be dispensed with in order to prevent manifest injustice." Id.  In Smith, the Hawaii court ruled that the insurance carrier was estopped from denying coverage because the insurance carrier had retained counsel for the insured and proceeded without a

reservation of rights.  The court ruled that the insured would

suffer manifest injustice if equitable estoppel was not applied,

stating:

> The inequities present in the record before
> us are clear.  AIG accepted and assumed
> Castillo's defense by assigning an attorney
> to the case shortly after the complaint was
> filed, even though it was plainly evident
> from the face of the complaint that a ground
> for noncoverage existed.  Rather than obtain
> a reservation of rights or non-waiver of
> rights, AIG: (1) chose instead to assume
> unconditional control over Castillo's
> defense; (2) reaffirmed its intention to
> provide coverage for compensatory damages
> within the policy limits; and (3) allowed
> Castillo's deposition to be taken,
> potentially exposing him to criminal
> liability, without the benefit of independent
> counsel.  Moreover, the information obtained
> by AIG's retained-counsel during the
> discovery process, including information
> learned from Castillo's deposition, was
> presumably relayed to AIG and served as the
> basis for AIG's denying coverage and
> withdrawing Castillo's defense.  AIG's
> actions effectively deprived Castillo of his
> right to: (1) obtain private counsel;
> (2) control his defense, *e.g.*, by arranging
> for an initial independent investigation of
> the facts; (3) explore possible settlement
> negotiations; and (4) control the manner of
> handling the lawsuit.  AIG's actions further
> created an apparent conflict of interest due
> to the insurance company's attorney
> performing a dual role, that is, maintaining
> exclusive control of the defense of the
> claims against the insured while gathering
> information that could simultaneously be used
> by the insurer to deny coverage.  Failure to
> apply the doctrine of equitable estoppel in
> the present situation would result in
> manifest injustice to Castillo.  We therefore
> hold that AIG is estopped from denying
> coverage under Castillo's policy.

Id. at 179-80, 891 P.2d at 266-67.

21

Unlike Smith, this case involves no contention that the attorney paid for by State Farm gathered information that State Farm used to deny coverage.  Moreover, State Farm has consistently maintained its defense of the Ramirezes and the State of Hawaii Defendants under a reservation of rights.  See Letter from Julie Quinn to the Ramirezes (Dec. 22, 2003) (attached to Ramirezes' opposition at Ex. 1); Letter from Julie Quinn to the Ramirezes (Dec. 29, 2003) (attached to Ramirezes' opposition at Ex. 2); Letter from Julie Quinn to the Ramirezes (Mar. 23, 2004) (attached as Ex. K to Declaration of Julie Quinn (Dec. 11, 2009); Letter from Russell Madamba to the Ramirezes (Jan. 31, 2005) (attached as Ex. L to Declaration of Julie Quinn); Letter from Russell Madamba to the Ramirezes (Feb. 4, 2005) (attached as Ex. M to Declaration of Julie Quinn); Letter from Russell Madamba to the Ramirezes (Oct. 31, 2005) (attached as Ex. N to Declaration of Julie Quinn); Letter from Bill Dowdell to the Ramirezes (Jan. 2, 2007) (attached as Ex. O to Declaration of Julie Quinn); Letter from Bill Dowdell to James C. Page, attorney for the State of Hawaii (Jan. 2, 2007) (attached as Ex. G to Declaration of Julie Quinn); Letter from Bill Dowdell to Colin J. Lau, attorney for the State of Hawaii (Jan. 26, 2007) (attached as Ex. H to Declaration of Julie Quinn); Letter from Julie Quinn to the Ramirezes (Feb. 9, 2007) (attached as Ex. P to Declaration of Julie Quinn).  Given these numerous letters indicating that State Farm was accepting the tender of the defense of the state-court action under a reservation of rights,

it was not reasonable for the Ramirezes or the State of Hawaii to believe that State Farm was unconditionally representing them and would continue to represent them through the end of the state-court trial and pay for any judgment up to the Policy limit. See, e.g., DelMonte v. State Farm Fire & Cas. Co., 90 Haw. 39, 51, 975 P.2d 1159, 1171 (1999) (distinguishing Smith, in part, because State Farm had timely issued a reservation of rights).

The Ramirezes and the State of Hawaii Defendants argue that State Farm should be estopped from denying coverage and providing them with a defense because State Farm spent about a quarter-million dollars in attorneys' fees defending against the state-court action during the nearly five years between its December 22, 2003, reservation of rights and the filing of this action in December 9, 2008.  This argument is based on the notion that it would be manifestly unjust for State Farm to deny coverage at this point.  The Ramirezes and the State of Hawaii Defendants argue that they were prejudiced by the handling of their state-court case by an attorney paid for by State Farm 1) because State Farm controlled the defense of the state-court action during that period, 2) because hiring private counsel at this point would be expensive, given the amount of material new counsel would have to review; and 3) because the attorney successfully fended off an attempt by the state-court plaintiffs to amend their complaints to add claims for money damages.  None of these reasons justifies the application of estoppel here.

The Ramirezes and the State of Hawaii Defendants fail to explain the nature of any so-called prejudice. For example, the Ramirezes say that State Farm controlled the defense for the five-year period in which State Farm should have promptly determined whether coverage existed under the Policy. In essence, they claim that they "lost control" of the defense of the state-court action. However, the Ramirezes are not claiming that they were not consulted and did not approve of the tactical and strategic decisions made by their attorneys. They do not say that their attorneys acted without their knowledge or over their objections. Nor do the Ramirezes say what they might have done differently. They do not say, for example, that they would have settled the state-court matter in the mediation or settlement discussions that did occur. Nor do they say that they would have advanced a different defense had State Farm not been paying for their representation.

At best, the Ramirezes say that allowing the state-court plaintiffs to amend their complaint to state a limited claim for money damages might have put the Ramirezes in a better position with respect to insurance coverage. However, the Ramirezes do not identify how such a claim would have been covered under the Policy.

In the state-court plaintiffs' May 10, 2007, motion for leave to file a first amended complaint (attached as Ex. D to

24

State Farm's concise statement), the state-court plaintiffs proposed amending their complaint "to 1) assert claims for monetary damages, including loss of value, stigma damages, nuisance and punitive damages and 2) to assert claims for intentional nuisance."  These proposed amendments did not seek to hold the Ramirezes liable for "bodily injury."  Nor did the proposed amendments state a claim for "property damage," which the Policy defines as "physical damage to or destruction of tangible property."  The asserted damages did not involve destruction of or damage to "tangible" property.  This court also notes that the Ramirezes' focus in the present case on insurance coverage may be blinding them to the possible downside of being sued for money damages in the state-court suit.  If the Ramirezes lose the state-court suit and if insurance coverage is denied, the Ramirezes might be relieved not to face money-damage claims.

     This court is also unpersuaded by the Ramirezes' argument that hiring an attorney at this point would be overly expensive.  The Ramirezes would have had to incur even more fees had they not had State Farm paying to defend them in the state-court suit.  And nothing prevented them from hiring independent counsel even while State Farm was providing a defense.  In this jurisdiction, insureds who are being provided a defense under a reservation of rights frequently retain an independent attorney who monitors the tort action and who may also serve as the

insureds' counsel in any coverage dispute.  The Ramirezes were always free to do this, and they do not even allege that State Farm prevented this.

V.        CONCLUSION.

        For the reasons set forth above, State Farm's motion for summary judgment is granted, and the Ramirezes' and the State of Hawaii Defendants' countermotions for summary judgment are denied.  This leaves for further adjudication the Ramirezes' third-party claims against Pamela Jones and Kelly Harada.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, January 22, 2010.



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              United States District Judge


State Farm Fire & Cas. Ins. Co. v. Ramirez, et al., CIVIL NO. 08-00557
SOM/LEK; ORDER GRANTING STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR
SUMMARY JUDGMENT AND DENYING COUNTERMOTIONS FOR SUMMARY JUDGMENT